**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN (JACKSON) DIVISION**

**MARNARGARIE COLEMAN,**
**on behalf of S.J.**                                                        **PLAINTIFF**

**V.**                                      **CIVIL ACTION NO.  3:12CV700 HTW-LRA**

**CAROLYN W.  COLVIN,**
**ACTING COMMISSIONER OF SOCIAL SECURITY**                   **DEFENDANT**

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

Marnargarie Coleman appeals the final decision denying the application for

Supplemental Security Income ("SSI") that she filed on behalf of her minor son, S.J.  The

Commissioner requests an order pursuant to 42 U.S.C. § 405(g), affirming the final

decision of the Administrative Law Judge.  Having carefully considered the hearing

transcript, the medical records in evidence, and all the applicable law, the undersigned

recommends that the decision be affirmed.

**Facts and Procedural Background**

On January 12, 2010, Plaintiff filed an application for SSI on behalf of her then 4-

year-old son, S.J., alleging he became disabled on January 1, 2007, due to asthma,

learning problems, and attention deficit hyperactivity disorder ("ADHD").  The

application was denied initially and on reconsideration.  Plaintiff appealed the denial, and

on July 11, 2011, Administrative Law Judge Larry J. Stroud  ("ALJ") rendered an

unfavorable decision, finding that Plaintiff had not established that S.J. was disabled

within the meaning of the Social Security Act.  The Appeals Council denied Plaintiff's

request for review.  She now appeals that decision.

## Childhood Disability Standard

In order for a child to be found disabled and entitled to SSI benefits, he or she must have a "medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(I).  When evaluating a child's eligibility for disability benefits, an ALJ engages in a three-step sequential process, which considers:

(1)    whether the child is doing substantial gainful activity;

(2)    if not, whether the child has a medically determinable "severe" impairment or combination of impairments; and

(3)    if so, whether the child's impairment or combination of impairments meets, medically equals, or functionally equals the severity of an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1.

*See* 20 C.F.R. § 416.924 (b)-(d).  If a child's impairment does not meet, medically equal, or functionally equal a listed impairment, the child will not be considered disabled. Functional equivalency is measured according to six domains of function: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being.  20 C.F.R. § 416.926a(b)(1); *see also Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000) (citing *Sullivan v. Zebley* 493 U.S. 521, 530-32 (1990)).  To be functionally equivalent to a listing, the impairment must result in either a "'marked'

limitation in two domains of functioning or an 'extreme' limitation in one domain ... ."
20 C.F.R. § 416.926a(a).  A marked limitation interferes seriously with the child's ability
to "independently initiate, sustain, or complete activities," while an extreme limitation
"interferes very seriously with [the child's] ability to independently initiate, sustain, or
complete activities."  20 C.F.R. §§ 416.926a(e)(2)(i) & 416.926a(e)(3)(i).

Upon reviewing the evidence, the ALJ concluded that S.J. was not disabled under
the Social Security Act and was not entitled to childhood disability benefits pursuant to
20 C.F.R. § 416.924(a).  At step one of the three-step sequential evaluation process, the
ALJ found that S. J. had not engaged in substantial gainful activity since January 12,
2010, the application date.  At steps two and three, the ALJ found that while S.J.'S
asthma, ADHD, borderline intellectual functioning, and language delay were severe, the
medical evidence did not support listing-level severity.  With regard to the six functional
domains, the ALJ concluded that Plaintiff had no limitations in moving and manipulating
objects, and less than marked limitations in acquiring and using information; attending
and completing tasks; health and physical well-being; interacting and relating with others;
and, caring for himself.

**Standard of Review**

This Court's review of the ALJ's decision is limited to two basic inquiries: "(1)
whether there is substantial evidence in the record to support the [ALJ's] decision; and (2)
whether the decision comports with relevant legal standards."  *Brock v. Chater*, 84 F.3d

3

726, 728 (5th Cir. 1996) (citing *Carrier v. Sullivan*, 944 F.2d. 243, 245 (5th Cir. 1991)).

*See also Richardson v. Perales*, 402 U.S. 389, 401 (1971).  The Fifth Circuit defines

substantial evidence as "that which is relevant and sufficient for a reasonable mind to

accept as adequate to support a conclusion; it must be more than a scintilla, but it need not

be a preponderance."  *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (quoting

*Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992)).  Any findings by the

Commissioner that are supported by substantial evidence are conclusive.  *Ripley v.

Chater*, 67 F.3d 552, 555 (5th Cir. 1995).

### Discussion

Coleman raises three primary arguments on appeal: (1) the ALJ erred in failing to

appoint her representation; (2) the ALJ's finding that S.J.'s impairments did not meet

Listings 112.05(D) for mental retardation is not supported by substantial evidence; and

(3) the ALJ failed to fully develop the record in assessing whether the claimant's asthma

meets Listing 103.3.

**1.     Whether the ALJ erred in allowing the claimant's mother to proceed
without counsel during the administrative hearing.**

A disability claimant has a statutory right to representation in Social Security

proceedings, and must receive adequate notice of his right to representation.  42 U.S.C. §

406; 20 C.F.R. § § 404.1706, 1720 and 416.1506, 1520.  *Castillo v. Barnhart*, 325 F.3d

550, 552 (5th Cir.  2003).  A claimant may waive the right if he is given sufficient

information to enable him to decide intelligently whether to retain counsel or proceed *pro*

*se. Norden v. Barnhart*, 77 F.App'x 221 (5th Cir. 2003) (citing *Clark v. Schweiker*, 652

F.2d 399, 403-04 (5th Cir. 1981)).

Plaintiff argues that the waiver of counsel was not knowingly and intelligently

made because the ALJ failed to orally provide adequate notice of the right to counsel at

the administrative hearing.  She maintains that the ALJ did not inform her that an attorney

could help with the proceedings and securing medical evidence.  She also asserts that the

ALJ failed to inquire as to whether she had a meaningful opportunity to secure counsel.

She further alleges that the ALJ failed to advise that attorney fees are limited to a

percentage of the past-due benefits and are scrutinized by the Social Security

Administration.

Contrary to the arguments on appeal, the record reflects that Plaintiff received

several written notices prior to the administrative hearing which provide in detail the very

information she alleges that she was not informed of.  Among the notices is a form

entitled "Your Right to Representation" which explains, *inter alia*, that a private attorney

or representative can provide assistance and collect a fee subject to the pre-approval of

the agency.  Additional notice was also provided in the Notice of Hearing, Notice of

Disapproved Claim, and Notice of Reconsideration.  The ALJ also gave the following

opening statement at the administrative hearing:

ALJ:        . . . Before I go any further, I do note you're here without an
            attorney or representative.

MTHR:       Yes, sir.

5

| ALJ: | That's something you can do, however I want to make sure you understand your rights.  You have the right to get an attorney for your representative.  There are quite a number of these people in the phone book that will take Social Security Disability that do this kind of work on the basis they don't charge a fee unless they win the case. |
| --- | --- |
| MTHR: | Okay. |
| ALJ: | Also legal services, through which you can qualify [INAUDIBLE]. |
| MTHR: | Yes. |
| ALJ: | I'm perfectly willing to have you go ahead and hear your case, ma'am.  But I want you to understand I won't be upset if you want to have a chance to find someone.  If you'd like to look for someone that will be fine with me, too.  I just need to know whether you want a chance to look for someone who can help you or if you want to go ahead now without an attorney or representative? |
| MTHR: | I would like to plead my case now without an attorney if that's okay. |
| ALJ: | Sure. . . .[1] |

The Court finds the ALJ's comments were adequate.  The Fifth Circuit has held

that the administration's written notices – coupled with an ALJ's notice at the

administrative hearing of the right to counsel – is sufficient to inform a claimant of her

statutory right to counsel.  *Castillo,* 325 F.3d at 552  ("We conclude that the numerous

written notices Castillo received – along with the ALJ's reminder to Castillo at the

hearing of the right to counsel – sufficiently informed her of her right to an attorney, and

that she validly consented to proceed without representation.") (citing *Brock*, 84 F.3d at

729 n. 1).  Nothing of record indicates that Plaintiff's mother suffered from a mental

impairment or was otherwise incapable of comprehending the written notices she

---

[1]ECF No. 5, pp. 224-25.

received, and she makes no such allegation on appeal. *See Hughes ex rel. T.H. v. Astrue*,

493 F. App'x.  594 (5th Cir. 2012) (unpublished).  The hearing transcript also reflects that

she executed a written waiver and submitted it at the administrative hearing. *Byrd v.*

*Commissioner of Social Sec*., 368 F.App'x. 542 (5th Cir.  2010) (unpublished).  This issue

is without merit.

> **2.    Substantial evidence supports the ALJ's finding that S.J.'s
> impairments did not meet Listing 112.05 for mental retardation**.

 To establish a mental retardation claim for disability benefits under Listing

112.05, claimants must demonstrate "significantly subaverage general intellectual

functioning ***with*** deficits in adaptative functioning."  20 C.F.R. Pt. 404, Subpt. P, App. 1 §

112.05 (emphasis added).  Section 112.05 D requires intelligence testing showing "a valid

verbal, performance, or full scale IQ of 60 though 70 and a physical or other mental

impairment imposing an additional and significant limitation of function." *Id.*  If more

than one I.Q. score is obtained, the lowest score is considered.  Section 12.00 D (6)(c) of

Appendix 1.  If a disability claimant's condition meets or equals the "listed" impairments,

he or she is conclusively presumed to be disabled.  A claimant has the burden of proving

that his condition meets or equals a listing, and he must manifest all of the specified

criteria of a particular listing to meet this burden. *Zebley,* 493 U.S. 521 at 530.

As evidence that her son satisfies the listings for mental retardation, Plaintiff cites

the I.Q. scores assessed by Consulting Examiner, Dr. Michael Whelan, in May 2010,

which indicated that S.J. had a Verbal I.Q. score of 67, Performance IQ score of 88, and a

Full Scale IQ score of 75.  She additionally cites the ALJ's finding that S.J.'s asthma, language delay, and ADHD were severe impairments.  As evidence of deficits in adaptive functioning, she cites the reports submitted by his school therapist, Melody Hardy, and his teacher, Stephanie Landry.  Contrary to what Plaintiff argues, the ALJ considered all of this evidence in assessing whether the listing criteria were met.

In evaluating Listing 112.05, the ALJ noted there was no evidence that S.J. exhibited mental incapacity manifested by a "dependence upon others for personal needs in excess of age-appropriate dependence."  Although his verbal I.Q. ostensibly falls within listing range, no examining or treating physician of record has ever diagnosed S.J. with mental retardation.  *Richard ex rel Z.N.F. v. Astrue*, 480 F. App'x 773  (5th Cir. 2012).  In his comprehensive evaluation, Dr. Whelan noted that S.J.'s verbal skills were within the "upper limits of the mild range of retardation due to his inability to make any correct responses on his Comprehensive Subtests and only one on the Similarities Subtests."  However, he stopped short of expressly diagnosing mental retardation.  Dr. Whelan opined that S.J.'s "non-language abilities appear to be within the low average range of intellectual capability," and that his "language development appears to be a major limitation in his acquiring basic academic skills as he proceeds through the educational system."  He specifically observed with regard to his I.Q. scores that:

> . . . [T]he split between verbal and performance abilities of twenty-one points certainly raises red flags.  I think that he has an underdevelopment of language functioning, which is primarily manifested in receptive language difficulties.  He also has articulation problems with his speech and needs to

8

be evaluated and or continued in treatment, under the direction of a speech/language pathologist.[2]

Based on the foregoing, the ALJ reasonably inferred from Dr. Whelan's findings that S.J. did not have a valid I.Q. score of 60 through 70; his low score was attributable instead to his developmental language delay, not mental retardation. *See Alexander v. Chater*, 95 F.3d 1148 (5th Cir. 1996) (holding that substantial evidence supported that claimant did not meet listing 112.05 where low I.Q. scores were attributable to a severe developmental delay, not mental retardation). This inference is bolstered by the assessment of state agency consultant, Dr. Jesse Dees, who noted in his report that Dr. Whelan found the claimant's language development artificially lowered his verbal I.Q.[3] But even if the Court were to find as Plaintiff argues, that the ALJ's finding was erroneous, a qualifying "score and an accompanying severe impairment alone are not sufficient to satisfy Listing 112.05(D)." *Richard ex rel Z.N.F.,* 480 F.App'x at 777. The listing for mental retardation requires that deficits in adaptive functioning must also be proven. *Randall v. Astrue*, 570 F.3d 651, 659-60 (5th Cir. 2009). Substantial evidence supports the ALJ's findings that the requisite deficits were not present here.

Melody Harvey, a school-based therapist who treated S.J. on a weekly basis, indicated that he had poor abilities in most functional areas in a questionnaire she submitted in February 2010. She reported that S.J. had been diagnosed with disruptive-

---

[2] ECF No. 5, pp. 20, 204.

[3] ECF No. 5, p. 214.

behavior disorder as evidenced by the fact that he was easily distracted with a poor attention span; threw tantrums when he could not get his way; and, cried constantly when he was redirected.  But as noted by the ALJ, there is no evidence that S.J. was ever treated medically for this condition.  As evidence of deficits in adaptive functioning, Plaintiff points to Ms. Harvey's findings that S.J. had a poor ability to understand and participate in discussions; to focus long enough to finish an assigned task; to follow rules in school; and, to deal with frustrations.  A neutral reading of her assessment shows she also indicated that S.J. had a fair ability to respect/obey family adult members; to converse with others acceptably; to exhibit adequate manners around others; and, to exhibit patience/care/concern for others.  In weighing this evidence, the ALJ acknowledged that as a school therapist, Ms. Harvey was not an acceptable source as contemplated under the regulations, but he found her opinion was entitled to significant weight to the extent that it established the severity of S.J.'s impairments.  *See* 20 C.F.R. § 416.913 (d)(1).[4]

He also assigned significant weight to the report submitted by the claimant's pre-kindergarten teacher, Stephanie Landry, in February 2010.  In her report, Ms. Landry advises that despite his speech-language impairment, S.J. was in regular classes with no special instructions, which was confirmed by his mother's testimony at the administrative hearing.  As deficits of adaptive functioning, Plaintiff highlights Ms. Landry's findings that S.J. had a serious problem with changing activities without causing disruption, and

---

[4]ECF No. 5, pp. 201- 203.

obvious problems playing cooperatively with children; following rules; obeying adult

authority; and, appropriately handling his frustrations, expressing anger, and asserting his

own emotional needs.  This Court's neutral reading of her opinion reflects that she also

overwhelmingly found that S.J. had no more than slight problems in almost every other

subset of the six functional domains.[5]

  With regard to acquiring and using information, she reported that S.J. had only

slight problems in comprehending oral instructions; understanding and participating in

class discussions; and, providing organized oral explanations and adequate descriptions;

he also had no problems in understanding school and content vocabulary; learning new

material; and recalling and applying previously learned material.  While Ms. Landry

reported that S.J. is in a "high-needs" reading and math group and gets daily support at a

slower pace, she notes that he is able to work independently once he learns the skill.[6]

Regarding his ability to attend and complete tasks, she noted S.J. had obvious

problems paying attention and carrying out multi-step instructions.  However, he had no

more than slight problems in sustaining attention during play/sports activities, focusing

long enough to finish assigned activities or tasks, refocusing to task when necessary,

carrying out single-step instructions, waiting to take turns, organizing his things or school

materials, completing work accurately without careless mistakes, working without

---

[5]ECF No. 5, pp. 108-15.

[6]*Id.* at 110.

distracting himself or others, and working at a reasonable pace and finishing on time.[7]

   With regard to interacting and relating with others, S.J. was noted to have obvious problems playing cooperatively with other children, expressing anger appropriately, following rules, and respecting or obeying adults in authority, but Ms. Landry did not rate these as serious problems.  While he had trouble transitioning and paying attention in group settings, his ability to concentrate on tasks had gotten much better.  He had no more than slight problems with making and keeping friends, appropriately seeking attention and asking permission, relating his experiences and telling stories, taking turns in a conversation, and, interpreting the meaning of facial expressions and body language.[8]

   When caring for himself, she noted that S.J. had slight problems being patient and appropriately responding to his mood changes, but he had no problems taking care of his personal hygiene; caring for his physical needs; taking his medication; using good judgment regarding personal safety; using appropriate coping skills; and, knowing when to ask for help.  He also had no problems in the domain of moving about and manipulating objects.  And, with regard to his health and physical well being, Ms. Landry noted that his asthma had caused him to miss some school, but it had not affected his performance while in school.[9]

---

[7]*Id*. at 111.

[8]*Id*. at 112.

[9]*Id*. at 113-115.

Ms. Landry's assessment is consistent with the findings of a state agency medical consultant who found claimant had less than marked limitations in acquiring and using information; attending and completing tasks; interacting and relating with others; and in caring for himself, all of which were adopted by the ALJ. The record also contains no evidence of limitations in moving and manipulating objects, and Plaintiff does not challenge the ALJ's finding that S.J. had less than marked limitations in health and physical well-being. Although the record confirms a history of asthma for which S.J. has received treatment, as the ALJ observed, multiple reports indicate that he was "not compliant with his treatment and that his medications have run out without being refilled." Medical records also reflect emergency room treatment for an upper respiratory infection in September 2009, a hospitalization for pneumonia and asthma in December 2009, and an asthma exacerbation in November 2008 that did not require emergency room treatment.[10]

While there may be conflicting evidence regarding the severity of his impairments, it is not the role of this Court to re-weigh the evidence, try the case *de novo*, or substitute its judgment for that of the ALJ. Substantial evidence supports the ALJ's finding that S.J. did not have the requisite deficits in adaptive functioning to meet Listing 112.05(D) for mental retardation. Accordingly, this assignment of error is without merit.

---

[10]ECF No. 5, pp. 22; 153-193.

### 3.    Substantial evidence supports the ALJ's finding that S.J. did not meet Listing 103.03 for asthma.

Finally, Plaintiff argues that the ALJ's failure to obtain S.J.'s prescription drug

records resulted in an erroneous finding that he did not meet Listing 103.03 for asthma.

20 C.F.R. Pt. 404, Subpt. P, App. 1.  It is undisputed that S.J. was diagnosed with asthma,

but a diagnosis alone is insufficient to establish presumptive disability.  For asthma to be

presumptively disabling, Listing 103.03 requires that asthma be accompanied by one of

the requirements enumerated in subsections (A)-(D) of the listing.  In evaluating Listing

103.03, the ALJ explained the following as to why none of the requirements set forth in

subsections (A)- (D) were met:

> . . . . The record does not contain evidence of pulmonary function testing resulting in an FEV 1, or attacks, in spite of prescribed treatment and requiring physician intervention, occurring at least once every two months or at least six times a year.  There is no evidence of persistent low-grade wheezing between acute attacks or absence of extended symptom-free periods requiring daytime and nocturnal use of sympathomimetic bronchodilators with one of the following[:]  persistent prolonged expiration with radiographic or other appropriate imaging techniques evidence of pulmonary hyperinflation or peribronchial disease, or **short courses of corticosteroids that average more than five days per month for at least three months during a twelve month period.**  There is no evidence of growth impairment**.**  The record contains no evidence of chronic asthmatic bronchitis.[11]

*Id.*

Plaintiff's sole argument on appeal is that the ALJ erred in failing to fully develop

the record with regard to S.J.'s prescriptions for corticosteroid usage for purposes of

103.03 (C)(2).  She contends that "proper consideration of this listing would necessarily

---

[11]ECF No. 5, p. 21 (Emphasis added by Plaintiff).

require the ALJ to secure the prescription history of the child for at least 12 months prior to application." To that end, she argues that such evidence would have revealed that S.J. had "prescriptions for Budesonide, a corticosteroid with refills showing an average usage of 10 days."[12]

Even if the Court were to find that the ALJ erred in failing to obtain prescriptions records, Plaintiff has not shown that she was prejudiced by the error. "A mere allegation that additional beneficial evidence might have been gathered had the error not occurred is insufficient to meet this burden." *Jones v. Astrue*, 691 F.3d 730, 735 (5th Cir. 2012).

The Court notes that although Plaintiff secured counsel and raised this argument on administrative appeal, she did not submit pharmaceutical records as new and material evidence of the claimant's corticosteroid usage for the Appeals Council's consideration. Nonetheless, medications for asthma treatment, including Budesonide, are documented in both the medical records secured by the ALJ, and in the administrative filings completed by the claimant's mother. Nothing of record substantiates Plaintiff's claim that corticosteroids were prescribed and refilled in such a way as to show the terms of 103.03 were met. Plaintiff has never refuted evidence that the claimant was non-compliant with his medication. Nor does she demonstrate or even allege that the other listing criteria for asthma are met. In the absence of evidence to the contrary, the ALJ's conclusion that S.J.'s asthmatic condition did not satisfy listing criteria is substantially supported by the

---

[12]ECF Nos. 7, p. 14; 11, p. 8.

evidence as a whole.

In sum, the undersigned's review of the record compels a finding that the ALJ applied the correct legal standards and that substantial evidence supports the ALJ's decision.  For these reasons, it is the opinion of the undersigned United States Magistrate Judge that Defendant's Motion to Affirm the Commissioner's Decision be granted; that Plaintiff's appeal be dismissed with prejudice; and, that Final Judgment in favor of the Commissioner be entered.

### NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Rule 72(a)(3) of the *Local Uniform Civil Rules of the United States District Courts for the Northern District of Mississippi and the Southern District of Mississippi*, any party within 14 days after being served with a copy of this Report and Recommendation, may serve and file written objections.  Within 7 days of the service of the objection, the opposing party must either serve and file a response or notify the District Judge that he or she does not intend to respond to the objection.

The parties are hereby notified that failure to file timely written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  28 U.S.C. § 636, Fed. R. Civ. P. 72(b) (as amended, effective December 1, 2009); *Douglas v. United Services Automobile Association*, 79 F.3d 1415,

1428-29 (5th Cir. 1996).

This the 14th day of February 2014.

/s/  Linda R. Anderson
UNITED STATES MAGISTRATE JUDGE